# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| CHARLES VILLINES, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 10-0848-CV-W-DW-P |
| | ) |
| LARRY DENNY, | ) |
| | ) |
| Respondent. | ) |

### OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS, AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Charles M. Villines, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on August 24, 2010, seeking to challenge his 2005 convictions and 2006 sentences for murder in the first degree and armed criminal action, which were entered in the Circuit Court of Jackson County, Missouri.

Petitioner raises five grounds for relief: (1) that the trial court erred in allowing the prosecutor to argue during closing arguments that deliberation was "thinking about it and talking about it;" (2) that the trial court erred in admitting petitioner's confessions; (3) that direct appeal counsel was ineffective in failing to argue on appeal that the trial court had erred in admitting an expert's testimony; (4) that direct appeal counsel was ineffective in failing to argue on appeal that the trial court had erred in excluding a witness's testimony; and (5) that direct appeal counsel was ineffective in failing to argue on direct appeal that the trial court had erred in excluding evidence that the victim was perverted.

Respondent contends that grounds 1, 2, and 3 of the petition lack merit, and that grounds 4

and 5 are procedurally defaulted.

## SUMMARY OF FACTS

On appeal from the denial of petitioner's Mo. Sup. Ct. Rule 29.15 motion, the Missouri Court of Appeals summarized the facts as follows:

> On January 9, 2004, [petitioner] killed a bound and gagged Mike Yong (Yong) by slitting his throat and stabbing him multiple times in the neck. Yong was an acquaintance of [petitioner]'s girlfriend, Christy Weaver (Weaver), who knew Yong as a frequent customer of the Waffle House. Weaver and [petitioner] were Waffle House co-employees. A week before the murder, Weaver and [petitioner] had purchased duct tape, rope, and gloves as part of a plan to enter Yong's home, tie him up, and steal from him. To attempt to prevent Yong from recognizing him, [petitioner] wore a mask. However, during the attack, Yong recognized [petitioner] despite the mask. After consultation with Weaver, [petitioner] killed Yong. The two then loaded up Weaver's car with stolen property and left.
>
> Acting upon a tip, police investigated both Weaver and [petitioner]. Weaver eventually confessed, implicating [petitioner], and the stolen goods were recovered from the home of [petitioner]'s childhood friend. Confronted with the evidence, [petitioner] composed a written confession and also confessed on videotape.
>
> [Petitioner] was charged as a prior offender with one count of first-degree murder and one count of armed criminal action. At trial, [petitioner]'s trial counsel presented expert witness testimony that [petitioner] suffered from dependent personality disorder and could not make decisions on his own. The State presented Mandracchia's testimony to rebut the psychological disorder defense argument. [Petitioner]'s trial counsel objected to Mandracchia's testimony in an oral pre-trial motion. [Petitioner]'s trial counsel argued that Mandracchia's testimony was improper due to a discovery violation, because Mandracchia had received a mental health report regarding Weaver that had been prepared for the sentencing phase of Weaver's trial, a report that [petitioner]'s defense team had not been provided. After the State pointed out that Mandracchia did not see the Weaver mental health report until *after* Mandracchia had prepared his

-2-

> independent psychoanalysis report of [petitioner], the trial court
> granted [petitioner]'s motion *in limine*, in part, expressly limiting
> Mandracchia's testimony to conclusions he had drawn from
> information and documentation equally available to the defense, but
> refusing [petitioner]'s trial counsel's request that Mandracchia should
> not be permitted to testify at all. At trial, Mandracchia testified
> without reference to the Weaver mental health report and without
> further objection from [petitioner]'s trial counsel.
>
> The jury found [petitioner] guilty of first-degree murder and armed
> criminal action. He was sentenced to concurrent sentences of life
> imprisonment without parole and life imprisonment. . . .

(Respondent's Exhibit K, pp. 2-4).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND 1

In his first ground for relief, petitioner contends that irreparable prejudice was injected into his trial when improper comments were made by the prosecutor during closing arguments. Petitioner

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-3-

argues that the prosecutor wrongly described the concept of deliberation, as required for murder in the first degree, to the jury. On direct appeal, the Missouri Court of Appeals disposed of this ground as follows:

> [Petitioner] also asserts that the circuit court erred in overruling his objection to the prosecuting attorney's defining "deliberation" during closing argument as "thinking about it and talking about it." We disagree.
>
> During closing argument, the prosecuting attorney noted that deliberation was an element of murder in the first degree and argued that [petitioner]'s conduct satisfied that element:
>
>> What is deliberation, ladies and gentlemen? How do we deliberate in everyday life? You're thinking about something. Should I do it, should I not. Ask people[, "]Should I do that?["] That's what he did. Deliberated. He thought about it. He thought about it out loud. He thought about it with Christy. ["]Should I do it? Should I kill him?["]
>>
>> Already had the stuff. It's not about the robbery. The stuff is already in the car. All the goods and money are already in the car. Protected from getting away because he's already incapacitated Mike Yong. He can't resist. And he thinks about and he says to Christy[, "D]o you think we'll get caught?["] She says[, "]I don't know.["]
>>
>> You heard the testimony[. H]e asked her several times[, "]Well, should I do it? What should I do?["] That's deliberation. That's thinking it through. That's talking it over. Deciding. That's what deliberation is. And you can infer that from the facts that came out of his own mouth[: "]I asked her what I should do. She wasn't in the bathroom with me.["] He goes into the bathroom after this hour of trying to decide[,] and he slits Mike Yong's throat.

-4-

> Ladies and gentlemen, I want you to think for a moment about what it must have been like for Mike Yong. Lying on that bathroom floor, duct taped, hog-tied, listening to these people decide[: D]oes he live or does he die[.] Imagine the torture of an hour of hearing: ["]Should I kill him?["] Imagine. Mike Yong heard him deliberate. Don't forget that. Don't forget that he heard them deliberate.
>
> What does he do? He goes in, he lifts up his head, and he slits his throat. We don't slaughter animals as inhumanly as this man killed Mike Yong. Don't forget that. And the man is still not dead. He's struggling. He's bound. He's bleeding. And he's still not dead[,] and what does he do? For the third time, he deliberates. He says on the tape, ["W]ell, he was suffering.["]
>
> What would you do? Maybe call 9[-]1[-]1. Call for rescue. Try to help him. He thinks about it[,] and he deliberates[: "]He is struggling. He is not dead yet. What do I do?["] He thinks about it[,] and he talks to Christy[. A]nd he asks Christy. That is deliberation, ladies and gentlemen[. T]hat's what deliberation is. It's thinking about it and talking about it.

[Petitioner] objected on the grounds that the prosecutor was misstating the definition of deliberation. The circuit court overruled his objection: "[W]hat the definition says is cool reflection. . . . [The state] was using the word 'deliberate,' thinking about it. I think it's within the realm of reasonable."

The circuit court has broad discretion in controlling the scope of closing argument, and we will reverse the circuit court's rulings during closing argument for an abuse of discretion only. *State v. Forrest*, 183 S.W.3d 218, 226 (Mo. banc), *cert. denied*, __ U.S. __, 127 S. Ct. 75 (2006). The statements by the prosecuting attorney concerning [petitioner]'s deliberation constituted a proper argument that [petitioner]'s conduct satisfied the deliberation element of murder in the first degree. Deliberation means "cool reflection for any length of time no matter how brief[.]" Section 565.002(3), RSMo

-5-

> 2000. The prosecutor merely was arguing that [petitioner]'s "thinking about it and talking about it" was sufficient to establish deliberation-a reasonable inference. The circuit court did not abuse its discretion in overruling [petitioner]'s objection to the prosecutor's closing argument.

(Respondent's Exhibit F, pp. 1-6).

The resolution of ground 1 by the state courts did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412-13 (2000).[2]

Ground 1 is denied.

## GROUND 2

In his second ground for relief, petitioner contends that the trial court erred in admitting his confessions. Petitioner contends that he invoked his right to counsel during interrogation, but his invocation was not respected by the officers interrogating him. On direct appeal, the Missouri Court of Appeals disposed of petitioner's ground as follows:

> [Petitioner] asserts that his oral and written statements in which he

---

[2]According to the opinion of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13.

-6-

confessed to the charged crimes were taken in violation of his right to counsel and privilege against self-incrimination protected by the Fifth and Fourteenth amendments to the United States Constitution and Article I, § 10, of the Missouri Constitution. We disagree.

Our review of a circuit court's ruling on a motion to suppress is limited to determining whether or not the evidence was sufficient to support the circuit court's ruling. *State v. Edwards*, 116 S.W.3d 511, 530 (Mo. banc 2003), *cert. denied*, 540 U.S. 1186 (2004). We consider the facts in a light favorable to the circuit court's denial of the motion to suppress and defer to its determinations of credibility. *Id.*; *State v. Blankenship*, 830 S.W.2d 1, 14 (Mo. banc 1992). We disregard any evidence contrary to the court's decision. *State v. Hutchinson*, 796 S.W.2d 100, 104 (Mo. App. 1990). We can reverse the circuit court's ruling only if we find it was clearly erroneous. *Edwards*, 116 S.W.3d at 530.

The evidence established that [petitioner] was arrested on January 24, 2004. Detective Don Frizzell of the Lee's Summit Police Department interviewed [petitioner] after advising him of his basic constitutional rights and after [petitioner] signed a waiver form. During the interview, which was videotaped, [petitioner] confessed to the charged crimes of murder in the first degree and armed criminal action. [Petitioner] also wrote and signed a statement confessing to the crimes.

Frizzell attempted to explain to [petitioner] what would occur during his arraignment. He told [petitioner] that a "not guilty plea" would be entered for him and that the court would "give you, like, a two week time window to get an attorney[,] and they'll appoint you a public defender." [Petitioner] responded with a comment which is unintelligible on the video recording, but which ended with "public defender." Frizzell replied, "They will[;] they'll appoint you one. But that's what'll happen, so don't let it bother you at all."

At the suppression hearing, Frizzell testified regarding his understanding of [petitioner]'s comment about a "public defender:"

> He said something to the effect of the Public Defender when I asked him. He was beginning to cry. And I've reviewed the tape several times and tried to tell what he says[,] and I can't understand exactly was [sic] he says. But in my mind, by looking back at the statement as well as reviewing the tape, I believed he

-7-

was concerned money wise that he wasn't going to be able to hire an attorney. And I don't think he quite understood that one would be appointed for him. So, I was thinking he was concerned with money issues.

The circuit court overruled [petitioner]'s motion to suppress and his objections to the admission of his statements at trial.

The Fifth Amendment to the United States Constitution guarantees that "[n]o person ... shall be compelled in any criminal case to be a witness against himself[.]" Missouri's constitution provides a similar guarantee in Article I, § 19. Warnings that a person has the right to remain silent, that, if he makes a statement, it may be used as evidence against him, and that he has a right to an attorney n.2 are designed "'to insure that the right against compulsory self-incrimination [is] protected.'" *State v. Bittick*, 806 S.W.2d 652,657 (Mo. banc 1991) (quoting *Michigan v. Tucker*, 417 U.S. 433,444 (1974)).

> n.2 *See* Miranda v. Arizona, 384 U.S. 436, 444 (1966).

During custodial interrogations, an accused has a right to have counsel present. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). If an accused requests a lawyer, the interrogation process must cease until a lawyer is present or until the accused reinitiates the process of his or her own accord. *Edward v. Arizona*, 451 U.S. 477, 484-85 (1981); *State v. Nicklasson*, 967 S.W.2d 596, 606 (Mo. banc 1998), *cert. denied*, 525 U.S. 1021 (1998). The request for a lawyer must be actual, unambiguous, and unequivocal to trigger the right. *State v. Bucklew*, 973 S.W.2d 83, 91 (Mo. banc 1998), *cert. denied*, 525 U.S. 1082 (1999). The accused must give "'a clear, consistent expression of a desire to remain silent' ... to invoke his rights adequately and cut off questioning." *Nicklasson*, 967 S.W.2d at 606 (citation omitted). He "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452,459 (1994); *State v. Wolf*, 91 S.W.3d 636, 643 (Mo. App. 2002).

[Petitioner]'s comment to Frizzell was not an unambiguous request to consult a lawyer. [Petitioner] used the words "public defender" in the context of a conversation regarding what would occur at his arraignment. Frizzell informed [petitioner] that a public defender

> would be appointed to represent him, and [petitioner] mumbled a response, which included the phrase "public defender." His response was not a clear, consistent expression of a desire to remain silent. Indeed, a "mere mention of counsel by the defendant is not sufficient to preclude further questioning. There must be a request." *State v. Reese*, 795 S.W.2d 69, 73 (Mo. banc 1990), *cert. denied*, 498 U.S. 1110 (1991) (footnote omitted). [Petitioner] made no such request. Hence, the circuit court did not clearly err in overruling [petitioner]'s motion to suppress and in admitting [petitioner]'s statement into evidence.

(Respondent's Exhibit F, pp. 1-4).

The resolution of ground 2 by the state courts did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams, 529 U.S. 362, 412-13 (2000).

Ground 2 is denied.

### **GROUND 3**

In his third ground for relief, petitioner contends that direct appeal counsel was ineffective in failing to argue on appeal a point of error regarding a prosecution witness. Specifically, the State at trial called an expert, Dr. Mandracchia, to testify as to the psychological state of petitioner. Mandracchia was able to see a psychological report regarding petitioner's co-conspirator in the murder, Christy Weaver, a day before petitioner testified. Yet, petitioner's trial counsel never got to see the report. The trial court, noting the discovery violation by the prosecution in not handing over the report to petitioner in a timely fashion, imposed the sanction that Mandracchia could not refer to or otherwise use the Weaver report during his testimony. However, the trial court still

-9-

allowed Mandracchia to testify in a limited fashion, contrary to the defendant's request that he be precluded from testifying at all. Counsel on direct appeal did not argue the trial court's alleged error in allowing Mandracchia's limited testimony. (See summary of facts, supra).

Federal habeas review of petitioner's ineffective assistance of counsel claim is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1420 (2009). First, petitioner must overcome the high bar of Strickland v. Washington, 466 U.S. 668 (1984), by showing that (1) counsel's performance fell below an objective standard of reasonableness; and (2) petitioner was sufficiently prejudiced such that "the result of the proceeding would have been different." Id. at 688, 694. Second, under 28 U.S.C. § 2254, petitioner must show that the state court's adjudication of his ineffective assistance claim was "unreasonable." Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 788 (2011). Both the Strickland standard and the standard set forth in § 2254 are highly deferential. Ultimately, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 131 S. Ct. at 788.

On appeal from the denial of petitioner's Rule 29.15 motion, the Missouri Court of Appeals disposed of this ground as follows:

> In his sole point on appeal, [petitioner] claims that the motion court clearly erred in failing to find that his appellate counsel was ineffective. [Petitioner] argues that his direct appeal appellate counsel's failure to include a claim of error based on the trial court's limited admission of Mandracchia's testimony unfairly prejudiced him. While Mandracchia did not testify about the Weaver mental health report in his trial testimony, [petitioner] still argues that it was a fundamentally unfair advantage for Mandracchia to have seen the Weaver psychological report prior to his testimony because [petitioner]'s trial counsel did not have the benefit of disclosure of the Weaver report in a timely manner. It is [petitioner]'s contention that if this claim had been asserted by [petitioner]'s direct appeal appellate counsel, this court would have looked favorably upon such a claim of error, and there was a reasonable probability that this court

would have reversed [petitioner]'s convictions based upon such error. We disagree.

[Petitioner]'s claim of error ultimately rests upon the Weaver mental health report made available to the State's expert witness the day before that witness was scheduled to testify. The Weaver report was a psychological evaluation prepared by Weaver's defense counsel in anticipation of her sentencing hearing. It was not provided to [petitioner]'s trial counsel, though it should have been. The trial court properly ruled that the Weaver report would be unavailable to Mandracchia for purposes of his trial testimony, and the trial court expressly ruled that the Weaver report would not be admissible and could not be referenced by the State or the State's witnesses at trial. However, this report was given to Mandracchia *months* after he had prepared his own independent psychological report regarding [petitioner]. Consequently, Mandracchia's report discussing his psychological opinions of [petitioner], and Mandracchia's testimony based upon that analysis, could not have relied upon the Weaver report since Mandracchia had not seen the Weaver report before he prepared his evaluative opinions of [petitioner]. Thus, the trial court was within its discretion in limiting Mandracchia's testimony but not excluding it in its entirety for precisely the reasons that the trial court announced in its pre-trial ruling. . . .

A finding that there is a discovery violation is within the discretion of the trial court and will only be overturned if fundamental unfairness to the defendant resulted. *State v. Taylor*, 944 S.W.2d 925, 932 (Mo. banc 1997); *State v. Delancy*, 258 S.W.3d 110, 115 (Mo. App. E.D. 2008). If, as here, a discovery violation is found, the remedy for that discovery violation is also within the trial court's sound discretion. *Delancy*, 258 S.W.3d at 115. An abuse of that discretion only occurs when the remedy crafted by the trial court results in fundamental unfairness to the defendant. *Id.* For any prejudice to rise to the level of fundamental unfairness, there must be a "'reasonable likelihood that an earlier disclosure of the requested evidence would have affected the result of the trial.'" *Id.* (quoting *State v. Scott*, 943 S.W.2d 730, 735-36 (Mo. App. W.D. 1997)).

Examining the transcript of the trial, we see that during Mandracchia's testimony, there is not a single mention of the Weaver report, no indication of a psychological diagnosis of Weaver, and no reference to Weaver at all. In fact, there is not even an acknowledgment by Mandracchia that [petitioner] even had a girlfriend. The testimony proffered by Mandracchia identified the

-11-

factual basis for Mandracchia's conclusion that he was reasonably certain that [petitioner] did not suffer from a mental condition or defect that would have prevented [petitioner] from deliberating at the time of the murder, and Mandracchia's testimonial conclusions did ***not*** rely upon any facts or conclusions from the Weaver report. n.4 We conclude that the discovery sanction crafted by the trial court effectively sealed off any possible contamination created by the State's discovery violation and that there was no "fundamental unfairness" at trial that would have caused an appellate court to overturn the trial court's discretionary action.

> n.4 We note that our assessment was corroborated by [petitioner]'s trial counsel, who did not object during Mandracchia's testimony. Trial counsel's failure to object not only highlights that [petitioner]'s present argument on appeal is without foundation, it also failed to preserve that issue for appeal in the direct appeal. *State v. Couch*, 256 S.W.3d 64, 69 (Mo. banc 2008) (quoting *State v. Copeland*, 928 S.W.2d 828, 848 (Mo. banc 1996)) ("Motions in limine preserve nothing for review unless objections are made at the appropriate time during the case."). This failure to preserve the objection to Mandracchia's testimony was noted by [petitioner]'s direct appeal counsel in her deposition and reflects yet another reason that the argument would have failed on direct appeal.

In her deposition testimony, [petitioner]'s direct appeal counsel (Flottman) provided the same reason as a part of her rationale for not asserting the claim of discovery sanction error on appeal: "It appeared to me that the trial court sufficiently excluded that part of the testimony [i.e. any reference to the Weaver report during Mandracchia's testimony]." It is well established that trial counsel cannot be faulted for failing to raise a non-meritorious objection. *Williams v. State*, 205 S.W.3d 300, 305 (Mo. App. W.D. 2006). In the same way, appellate counsel will not be found ineffective for choosing not to raise a non-meritorious point on appeal. *Glover v. State*, 225 S.W.3d 425, 429 (Mo. banc 2007). A non-meritorious claim cannot serve as a basis for this court finding ineffective assistance of counsel because it meets neither prong of the *Strickland* test. Appellate counsel cannot be "outside the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690, for failing to raise a point that did not have merit. Furthermore, a claim without merit could not, by definition, prejudice the appellant since

-12-

> it cannot inject uncertainty about the decision of the motion court that
> is "sufficient to undermine confidence in the outcome." *Strickland*,
> 466 U.S. at 694. Therefore, we agree with [petitioner]'s direct appeal
> counsel's assessment that the trial court sufficiently restricted the
> admissibility of information from the inadmissible Weaver report and
> that there was no appealable error relating to the Weaver report or
> Mandracchia's testimony.

(Respondent's Exhibit K, pp. 5-8).

The resolution of ground 3 by the state courts did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). Applying the Strickland and Richter standards of review to the facts as set forth in the record, the Court does not find direct appeal counsel was ineffective.

Ground 3 is denied.

## **GROUNDS 4 AND 5 - PROCEDURAL DEFAULT**

In ground 4, petitioner contends that appellate counsel was ineffective in failing to argue on direct appeal that the trial court had erred in excluding a witness's testimony. In ground 5, petitioner contends that counsel was ineffective in failing to argue on direct appeal that the trial court had erred in excluding evidence that the victim was perverted. Respondent contends that both of these grounds are procedurally defaulted, and petitioner makes no effort in his reply to argue the contrary.

In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims
> in state court pursuant to an independent and adequate procedural
> rule, federal habeas review of the claims is barred unless the prisoner
> can demonstrate cause for the default and actual prejudice as a result

-13-

> of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

A review of the record shows that petitioner defaulted the claims set forth in grounds 4 and 5 by not raising them on appeal from the denial of his Rule 29.15 post-conviction relief motion. (See Respondent's Exhibit I). Consequently, these grounds for relief may not be reviewed by the Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Petitioner does not attempt to show cause for his default. (See Doc. No. 12). Even though petitioner has failed to demonstrate cause (and, therefore, we do not consider prejudice) for his procedural default, the Court can still reach the merits of his claims if he can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence . . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. (citing Schlup v. Delo, 513 U.S. 298 (1995)). A review of the record reflects that

-14-

petitioner has failed to satisfy this test.

Petitioner has failed to show cause for and prejudice from the default of grounds 4 and 5. He also has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of grounds 4 and 5 is not required to prevent a fundamental miscarriage of justice. Murray v. Carrier, 477 U.S. at 495.

Grounds 4 and 5 are denied, and the case will be dismissed, with prejudice.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

/s/ Dean Whipple
DEAN WHIPPLE
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,
Dated: February 29, 2012.